UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEWAYNE ROY WILSON,

                                        Petitioner,

                                                                  9:14-CV-01511

v.

                                                                  (GLS/TWD)

WARDEN MICHAEL BRECKON,

                                        Respondent.

_____

APPEARANCES:                              OF COUNSEL:


DEWAYNE ROY WILSON
07731-084
Petitioner pro se
Raybrook Federal Correctional
   Institution
P.O. Box 900
Ray Brook, New York 12977


RICHARD S. HARTUNIAN          CHARLES E. ROBERTS, ESQ.
United States Attorney                Assistant United States Attorney
Attorney for Respondent
Office of the United States Attorney -
   Syracuse
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

        Pro se Petitioner Dewayne Roy Wilson has filed a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241.  (Dkt. No. 1.)  Wilson is in the custody of the Federal Bureau of

Prisons ("BOP") and is housed at Ray Brook Federal Correctional Institution ("Raybrook").  *Id.*

at 1.[1]  Respondent has answered and Petitioner has filed a traverse.  (Dkt. Nos. 6, 7.)  Petitioner challenges the BOP's alleged failure to properly apply detention credit awarded for 102 days of prior detention.  (Dkt. No. 1.)  For reasons explained herein, the Court recommends that the petition be denied and dismissed.

## I.     BACKGROUND

### A.     Petitioner's Present Conviction and Sentence

Petitioner was arrested by the Waynesboro Police Department in Waynesboro, Virginia for the manufacture of a controlled substance and obstruction of justice on October 24, 2012. (Dkt. No. 6-1 at ¶ 5.)  Thereafter, on December 12, 2012, Petitioner was indicted on drug charges in the United States District Court for the Western District of Virginia, and on January 4, 2013, the Commonwealth of Virginia charges were Nolle Pross/Dismissed and Petitioner was released to the United States Marshals Service. *Id*. at ¶¶ 6-7.   On February 27, 2013, a First Superseding Indictment was issued indicting Petitioner on counts of conspiracy to knowingly and intentionally distribute and possess with intent to distribute heroin, distribution of cocaine hydrochloride, knowingly possessing with the intent to distribute heroin, and knowingly possessing with the intent to distribute "crack" cocaine.  (Dkt. No. 6-2 at 18-20.)  Petitioner was found guilty of all four charges by a jury at trial.  *Id.* at 22; *U.S. v. Wilson*, Criminal Action No. 3:12CR00035-001, 2016 WL 1192699, at * 2 (W.D. Va. March 22, 2016).[2]  He was sentenced to serve 168 months as to each count, to run concurrently, followed by a period of eight years

---

[1]  Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

[2]  Copies of unpublished decisions will be provided to Petitioner.  *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

supervised release.  (Dkt. Nos. 6-2 at 24-25; 6-3 at 10.)

The Designation and Sentence Computation Center computed Petitioner's current federal sentence to commence on August 20, 2013, the date he was sentenced, with prior detention credits beginning October 24, 2012, through August 19, 2013, for a total of 300 days prior detention credit.  (Dkt. Nos. 6-1 at ¶ 11; 6-3 at 11.)  Petitioner's projected release date is January 3, 2025.  (Dkt. No. 6-3 at 10.)

### B.     Petitioner's Prior 102 Day Detention Credit

On January 22, 2015, Warden Langford responded to Petitioner's November 26, 2014, Request For Administrative Remedy seeking to have 102 days of prior detention credit for time served from October 4, 2002, until January 14, 2003, credited to the sentence imposed on August 20, 2013, and presently being served by Petitioner.  (Dkt. No. 6-3 at 33-34.)  Warden Langford informed Petitioner that the detention credit had already been awarded to him in prior federal sentence computation 020, which is unrelated to the federal sentence currently being served by him (computation 030).  *Id.* at 33.  Prior computation 020 shows that ninety-eight days detention credit was awarded for the period October 8, 2002, through January 13, 2003, in the computation of time to be served on a ten month sentence for probation imposed on May 10, 2004.  *Id*. at 13, *see also* Dkt. No. 7-1 at ¶ 12.  According to Petitioner, the detention credits were not applied on that sentence and were instead wrongfully applied to his eight month incarceration in 2008-2009.  (Dkt. No. 7-1 at ¶ 23.)

## II.     LEGAL ANALYSIS

28 U.S.C. 2241 provides generally that the federal courts have the power to grant writs of habeas corpus on behalf of prisoners who are "in custody in violation of the Constitution or laws

. . . of the United States." 28 U.S.C. § 2241(c)(3).  The statutory language has been interpreted

by the Supreme Court as requiring the habeas petitioner to be "'in custody' under the conviction

or sentence under attack at the time of his petition."  *Maleng v. Cook*, 490 U.S. 488. 490-91

(1989) (citing *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968)).

A challenge to the execution of a sentence under 18 U.S.C. § 3585 is properly raised in a

§ 2241 petition.  *United States v. Werber*, 51 F.3d 342, 349, n.17 (2d Cir. 1995); *see also*

*Poindexter v. Nash*, 333 F.3d 372, 377 (2d Cir. 2003) ("Under § 2241, a prisoner may challenge

the . . . calculations by the [BOP] of the credit to be give for other periods of detention.")

(quoting *Roccisano v. Menifee*, 293 F.3d 51, 57 (2d Cir. 2002)).

18 U.S.C. § 3585 provides that a defendant is entitled to credit toward the term of

imprisonment if the defendant, prior to the commencement of the sentence, has spent time in

detention: "(1) as a result of the offense for which the sentence was imposed; or (2) as a result of

any other charge for which the defendant was arrested after the commission of the offense for

which the sentence was imposed; that has not been credited against another sentence."  18

U.S.C. § 3585(b).  *See also Werber v. United States*, 149 F.3d 172, 173 (2d Cir. 1998) (time

already credited to another sentence may not also be credited towards a federal sentence because

18 U.S.C. § 3585(b) bars double-counting.").  The authority to calculate when a federal sentence

starts and whether any credit is due for time served prior to the commencement of the federal

sentence rests with the BOP rather than the sentencing court.  *See United States v. Luna-*

*Reynoso*, 258 F.3d 111, 117 (2d Cir. 2001); *Werber*, 149 F.3d at 179.

Although not statutorily required, the Second Circuit has made clear that a petitioner

must exhaust his administrative remedies in accordance with BOP policy prior to filing a habeas

corpus petition under § 2241.  *See Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 634 (2d

Cir. 2001) (exhaustion requirement applies to a petitioner challenging the execution of his

sentence under § 2441); *Smith v. Federal Bureau of Prisons*, No. 11 Civ. 8825(RJS)(FM), 2013

WL 2252967, at * 3 (S.D.N.Y. May 21, 2013) ("Prior to seeking relief under Section 2241

[regarding the post-conviction execution of his sentence] . . . a prisoner is required to exhaust all

administrative remedies.").

**A.      Petitioner's Claim that the 102 Day Detention Credit Should Be Applied to His Present Sentence**

Respondent has construed Petitioner's habeas petition to assert a claim that he is entitled

to have the prior detention credit of 102 days applied to the sentence he is presently serving.

(Dkt. Nos. 6 at 2; 6-1 at ¶ 3.)  Respondent's construction is reasonable given Petitioner's

November 26, 2014, administrative request for that remedy and the allegation in his petition that

he is "challenging unawarded Jail Credits from a prior Incarceration Period within the Federal

Bureau of Prisons, that still effects Computation."  (Dkt. Nos. 1 at ¶ 5; 6-3 at 33-34.)

Respondent claims that Petitioner's petition should be denied and dismissed because

Petitioner failed to exhaust his administrative remedies before filing his petition.  (Dkt. No. 6 at

4-8.)  *See Carmona,* 243 F.3d at 634 (requiring exhaustion of administrative remedies under

Section 2241).  It appears that Petitioner has failed to exhaust given the evidence revealing that

he commenced this proceeding prior to the time Warden Langford issued his denial on

Petitioner's administrative request on January 22, 2015 (Dkt. No. 1), and there is no evidence

that Petitioner ever appealed Langford's denial to the Northeast Regional Office or the General

Counsel's Office in the Central Office.  *See* Bureau of Prisons' Administrative Remedy

Program, 28 C.F.R. 542.10 *et seq*.

The Court finds that even if Petitioner had exhausted his administrative remedies, his claim that the 102 days of detention credit should be applied to his present sentence should be denied on the merits. The 102 day credit Petitioner seeks to have credited to the sentence presently being served was not time spent in detention as a result of Petitioner's conviction on the drug charges resulting in the sentence imposed on August 20, 2013, which is presently being served by Petitioner, or for any charge for which he was arrested after the commission of those offenses, as required by 18 U.S.C. § 3585(b). *See Werber*, 149 F.3d at 173. Moreover, Plaintiff has conceded that the detention credit at issue was applied, albeit in his opinion inappropriately, to his second probation violation incarceration that occurred in 2008-2009. (Dkt. No. 7-1 at ¶ 23.) Section 3585(b) prohibits receipt of a double credit for detention time. *U.S. v. Wilson*, 503 U.S. 329, 337 (1992).

**B.    Petitioner's Challenge to the Alleged Failure to Follow the Judgment and Commitment Order in Case No. 3:99 CR0072-001**

In his petition and again in his traverse, Petitioner has indicated that he is challenging the BOP's failure to properly apply § 3585(b) with regard to the 102 days of detention credit from the incarceration period March 3, 2002, until January 4, 2005, by inappropriately applying them to his 2008-2009 incarceration period. (Dkt. Nos. 1 at ¶¶ 5-6; 7-1 at ¶¶ 18-23.) According to Petitioner, "Ms. Grace Woods-Coleman, is Factually Incorrect, in her assertion that I am merely seeking to be awarded the 102 days of prior jail credits. The Gist of my challenge is the False Imprisonment and deprivation of Liberty that I Suffered, in violation of the Due Process Clause of the United States Constitution's Fourteenth Amendment." (Dkt. No. 7-1 at ¶ 18.)

As noted above, the federal district courts have jurisdiction to entertain habeas petitions only from persons who are "in custody on violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The Supreme Court has stated that this language requires "that the habeas petitioner be 'in custody' under the conviction or sentence under attack at the time the petition is filed." *Maleng*, 490 U.S. at 490-91. Petitioner is in custody for the drug conviction for which he was sentenced on or about August 20, 2013. (Dkt. No. 6-3 at 4.)

Plaintiff concedes that he is challenging the execution of an expired sentence. (Dkt. No. 7-1 at ¶ 24.) A habeas petitioner cannot be considered "in custody" under a conviction for purposes of § 2241 when the sentence imposed for that conviction has fully expired at the time the petition is filed. *Maleng*, 490 U.S. at 491. Petitioner, therefore, cannot satisfy § 2241's jurisdictional "in custody" requirement with regard to his challenge to the BOP's alleged improper allocation in 2008-2009 of 102 days of detention credit related to a judgment of conviction and execution of the sentence in Case No. 3:99 CR0072-001, and related claims of violation of his constitutional rights in connection therewith.[3] (Dkt. No. 7-1 at ¶¶ 18-19, 23.)

## III.    CONCLUSION

Based upon the foregoing, the Court recommends that Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 be denied and dismissed.

---

[3] The Court notes that subsequent to filing this habeas proceeding, Petitioner filed a civil rights action under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 395-97 (1971) seeking monetary damages against multiple defendants regarding the failure to properly apply the 102 days prior detention credits in 2004-2005 due to an incorrect release date of February 10, 2005. (Case No. 7:15-cv-000040-JPJ-REB (W.D. Va.), Dkt. No. 1.) As in his traverse, Plaintiff alleged claims for violation of 18 U.S.C. § 3585(b), due process, and double jeopardy. *Id.* The complaint was found to be time-barred and dismissed as frivolous upon initial review under 28 U.S.C. § 1915A. *See Wilson v. Holder*, No. 7:15CV00040 JPJ-REB, 2015 WL 3745723 (W.D. Va. June 15, 2015).

**ACCORDINGLY**, it is hereby

**RECOMMENDED** that Petitioner's petition for a writ of habeas corpus (Dkt. No. 1) be **DENIED** and **DISMISSED** in its entirety; and it is hereby

**ORDERED** that the Clerk provide Petitioner with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: March 27, 2017
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[4] If you are proceeding pro se and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

2013 WL 2252967
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

John SMITH, Petitioner,
v.
FEDERAL BUREAU OF
PRISONS, et at., Defendants.

No. 11 Civ. 8825(RJS)(FM).
|
May 21, 2013.

*ORDER ADOPTING REPORT
AND RECOMMENDATION*

RICHARD J. SULLIVAN, District Judge.

**\*1** Petitioner John Smith [1] brings this action pursuant to 28 U.S .C. § 2241, challenging the execution of two concurrent sentences that were imposed by the United States District Court for the Eastern District of New York but which he is serving in this district. Specifically, Petitioner asserts that he was entitled to receive credit against his current sentences for time that he previously spent in prison because the conduct underlying all of the offenses of conviction is the same. Petitioner initiated this action by filing his Petition for a Writ of Habeas Corpus (the "Petition") on December 5, 2011. By Order dated December 19, 2011, this matter was referred to the Honorable Frank Maas, Magistrate Judge. Briefing on the Petition was completed on February 17, 2012 and was submitted under seal in order to protect Petitioner's identity. On July 3, 2012, Judge Maas issued a Report and Recommendation (the "Report) recommending that the Petition be denied because the Bureau of Prisons correctly applied the governing statute, 18 U.S.C. § 3585(b), in calculating Petitioner's sentence. In the Report, Judge Maas advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b). No party has filed objections to the Report, and the time to do so has expired. *See Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1993).

When no objections to a report and recommendation are made, the Court may adopt the report if there is no clear error on the face of the record. *Adee Motor Cars, LLC v. Amato,* 388 F.Supp.2d 250, 253 (S.D.N.Y.2005); *La Torres v. Walker,* 216 F.Supp.2d 157, 159 (S.D.N.Y.2000). After reviewing the record, the Court finds that Judge Maas's well-reasoned Report is not facially erroneous. Accordingly, the Court adopts the Report in its entirety and, for the reasons set forth therein, denies the Petition. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

*REPORT AND RECOMMENDATION TO
THE HONORABLE RICHARD J. SULLIVAN* [*]

FRANK MAAS, United States Magistrate Judge.

Petitioner John Smith ("Smith") brings this proceeding pseudonymously, [1] pursuant to 28 U.S.C. § 2241 ("Section 2241"), to challenge the execution of two concurrent sentences that were imposed in the United States District Court for the Eastern District of New York, but which he is serving in this District. In his Petition ("Petition" or "Pet."), Smith contends that the Federal Bureau of Prisons ("BOP") should have granted him credit against those sentences for time that he previously spent in custody between June 2, 2004, the date he was arrested on a felony weapons possession charge, and August 7, 2006, when he completed serving the thirty-month sentence imposed following his guilty plea to that charge. In Smith's view, this adjustment is required because the criminal conduct underlying his current sentences and his prior sentence arises out of the same set of facts, thus compelling the BOP to treat all three sentences as a single sentence for purposes of calculating his release date.

**\*2** For the reasons set forth below, the Petition should be denied.

I. *Background*

A. *Prior Weapons Charge*
On June 2, 2004, Smith was arrested after he transferred a handgun to a cooperating witness on July 23, 2003. (ECF No. 2 ("Pet'r's Mem.") at 2; (ECF No. 11 (Decl.

of Dennis Melick dated Feb. 15, 2012 ("Melick Decl.")) Ex. 1). Smith subsequently entered into a plea agreement, pursuant to which he pleaded guilty in the Eastern District of New York to a charge of felony weapons possession. (*Id.*). On March 4, 2005, Judge Nicholas Garaufis sentenced Smith to a term of thirty months in prison, to be followed by three years of post-release supervision. (*Id.*). In calculating Smith's release date, the BOP gave him credit for the time he was in custody between June 2, 2004, when he was arrested, through March 3, 2005, the date prior to when his sentence was imposed. (*Id.*). Smith completed serving his sentence on August 7, 2006, but remained in BOP custody because a detainer had been lodged on July 24, 2006, in connection with racketeering charges.

### B. *Subsequent Offenses*
On April 20, 2005, Smith entered a plea of guilty in the Eastern District to a racketeering conspiracy charge. (Pet'r's Mem. at 2). On August 9, 2005, in a separate criminal action in the Eastern District, Smith entered a plea of guilty to charges of murder in aid of racketeering, and making a false statement contained in a separate criminal information. (*Id.* at 3).

On December 2, 2008, Judge Sandra L. Townes, to whom both of the later cases were assigned, sentenced Smith to 100 months of imprisonment on the racketeering charge and a concurrent sentence of 180 months on the murder in aid of racketeering and false statement charges. (Melick Decl. ¶ 6).

In calculating Smith's release date with respect to the three later charges, the BOP determined that he was entitled to receive credit for the time spent in federal custody after the expiration of his felony weapons possession sentence. (*See id.* Exs. 5, 6). Accordingly, Smith received credit against his concurrent sentences for the period from August 8, 2006, through December 1, 2008. Based on this computation, and a projection of his good conduct time, the BOP anticipates that he will be released on September 1, 2019, when he completes his 180–month sentence. (*Id.* Ex, 6).

### C. *Administrative Review of Sentence Calculation*
After learning of the BOP's sentence calculations, Smith submitted a request that the BOP regional office credit against his current sentences the time he previously had

spent in custody between June 2, 2004, the date of his arrest on the prior weapons offense, and August 7, 2006, the date he completed serving his sentence on that charge. (Pet'r's Mem. at 4). Following the denial of that request, Smith submitted an appeal to the BOP. (*Id.* Ex. A at 1). In that appeal, dated September 17, 2010, Smith contended that the BOP had the authority under Title 18, United States Code, Section 3585(b) ("Section 3585(b)") to determine that the conduct underlying the felony weapons possession and later charges was related because all of the charges arose out of "overlapping conduct." (Pet'r's Mem. Ex A at 1). Smith contended that he therefore was entitled to a credit for all of the time that he served in connection with the felony weapons possession charge.

**\*3** On December 8, 2010, the BOP's National Inmate Appeals Division denied Smith's appeal. (*Id.* Ex. A at 2). In its written decision, the Division held that a defendant's prior sentence credit is controlled by Section 3585(b). (*Id.*). As the Division explained, because Smith received credit for the prior period "toward [his first] federal sentence, credit for that period may not also be applied toward [his subsequent] (and current) federal sentence [s]." (*Id.*).

### D. *Habeas Petition*
On December 5, 2011, Smith filed this proceeding asserting that he is entitled to receive credit against his current sentences for the time that he previously spent in custody because the criminal conduct underlying his felony weapons possession sentence stemmed from the same conduct as his racketeering sentence. Specifically, Smith contends that the weapon he was arrested for possessing, and which resulted in his weapons possession conviction, was the same one used in the commission of racketeering predicate offenses. Thus, Smith claims that (1) the BOP had the authority to treat his prior and current sentences as a single sentence for purposes of calculating the time he would be required to serve, and (2) he is entitled to receive credit against his current sentences for all the time he has spent in custody since his arrest on the weapons charge. (Pet'r's Mem. at 6–7). Smith seeks an order directing the BOP to credit his sentences accordingly. (Pet. at 4).

On January, 5, 2012, in response to the Petition, the BOP again reviewed its computation of Smith's current sentences. (Melick Decl. ¶ 7). The BOP determined that its prior computation was accurate, noting that it was

2013 WL 2252967

precluded from crediting against Smith's current sentences the time he spent in custody from June 2, 2004, through August 7, 2006, because that period of time already had been credited against his 2005 sentence for felony weapons possession. (*Id.* ¶ 8).

## II. *Discussion*

### A. *Applicability of Section 2241*

A petition for a writ of habeas corpus filed by a federal inmate pursuant to 28 U.S.C. § 2241 is proper when the inmate is challenging the post-conviction execution of his sentence, rather than its legality. *Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 632 (2d Cir.2001). Prior to seeking relief under Section 2241, however, the petitioner is required to exhaust all administrative remedies. *United States v. Wilson.* 503 U.S. 329, 335 (1992); *Martinez v. United States,* 19 F.3d 97, 99 (2d Cir.1994). Here, the Respondent agrees that Smith has fully exhausted his administrative remedies. (ECF No. 11 ("Resp't Mem.") at 4). Accordingly, the Court can address the merits of Smith's claim.

### B. *Prior Custody Credit*

#### 1. *Section 3585(b)*

Section 3585(b) provides that

a defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences

*4 (1) as a result of the offense for which the sentence was imposed; or

(2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

*that has not been credited against another sentence.*

Section 3585(b) (emphasis added). Thus, an inmate is entitled to receive credit against a sentence for any period of time spent in custody prior to its commencement, provided that a credit for that same time period has not already been applied against another sentence. The authority to determine and calculate prior custody credit rests with the

BOP. *Wilson.* 503 U.S. at 335 ("the Attorney General, through BOP, is responsible for administering sentences"). When calculating the appropriate amount of prior custody credit, if any, the BOP consequently must consider whether detention time has already been credited against another sentence. *Id.* at 337 ("Congress made clear that a defendant could not receive a double credit for his detention time.").

#### 2. *Application of Law to Facts*

Smith asserts that his prior and current sentences should be treated as a single sentence for purposes of calculating prior custody credit because the criminal conduct underlying his prior weapons possession and current racketeering sentences stemmed from the same conduct. As the Respondent correctly notes, however, Section 3585(b) precludes the BOP from granting credit for time previously spent in custody when a credit for that same time period already has been applied against another sentence. (*See* Resp't Mem. at 7, 8). Here, the period of June 2, 2004, through August 7, 2006, for which Smith seeks credit, already has been applied against for Smith's 2005 sentence. Accordingly, as a matter of law, it cannot also be applied against Smith's current sentences.

As the Respondent further correctly notes, the Petition appears not to be based on Section 3585(b), but on Section 5G1.3 of the United States Sentencing Guidelines Manual, which authorizes a *district court* to take into account when imposing sentence time previously served for another crime that constitutes "relevant conduct to the instant offense of the conviction." (*See* Resp't Mem. at 8 (citing U.S. Sentencing Guidelines Manual § 5G1.3)). Smith therefore could have argued before Judge Townes that a reduction in the length of his concurrent sentences was appropriate. Whether he did so or not, neither the Sentencing Guidelines nor Section 3585(b) authorizes the *BOP* to make such an adjustment once sentence has been imposed. Indeed, Section 3585(b) makes clear that the BOP cannot credit against a current sentence time that previously has been credited against another sentence. Smith's Petition therefore is meritless.

## III. *Conclusion*

For the foregoing reasons, the Petition should be denied.

## IV. *Notice of Procedure for Filing of Objections to this Report and Recommendation*

**\*5** The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within fourteen days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Richard J. Sullivan, United States District Judge, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, N.Y. 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b) (1); Fed.R.Civ.P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Sullivan. Any failure to file timely objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72(b).

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 2252967

Footnotes

[1]   Petitioner, who is in the federal Witness Security Program, brings this action pseudonymously.

[*]   This Report and Recommendation was prepared with the assistance of Shantal Sparks, a student at New York Law School.

[1]   Smith is enrolled in the Witness Security Program, and thus filed this proceeding using a fictitious name.

**End of Document**                                              © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2016 WL 1192699
Only the Westlaw citation is currently available.
United States District Court,
W.D. Virginia,
**Charlottesville Division**.

United States of America
v.
Dewayne Roy Wilson, Defendant.

Criminal Action No. 3:12CR00035-001
|
Civil Action No. 3:15CV80812
|
Signed 03/21/2016
|
Filed 03/22/2016

**Attorneys and Law Firms**

Jordan Edward McKay, Ronald Mitchell Huber, United States Attorney's Office, Charlottesville, VA, for United States of America.

Joel Christopher Hoppe, Federal Public Defenders Office, Charlottesville, VA, for Defendant.

**MEMORANDUM OPINION**

Glen E. Conrad, Chief United States District Judge

**\*1** Dewayne Roy Wilson, a federal inmate proceeding pro se, has moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss, and Wilson has responded, making this matter ripe for consideration. Upon review of the record, the court concludes that Wilson 's claims lack merit and that the government's motion to dismiss must be granted.

**I.**

On December 12, 2012, a grand jury charged Wilson and a codefendant in a four-count superseding indictment with: (1) conspiring to distribute one hundred grams of a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 846; (2) distributing a mixture or substance containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C); (3) possessing with intent to distribute a mixture or substance containing a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C); and (4) possessing with intent to distribute a mixture or substance containing a detectable amount of cocaine base (or "crack"), in violation of 21 U.S.C. §§ 841(a)(l) & (b)(1)(C).

On February 15, 2013, Wilson's counsel filed a motion to suppress, claiming that Wilson had been arrested without a warrant and without probable cause. The motion was not accompanied by a memorandum in support. On March 11, 2013, the court held a hearing on the motion. A detective testified that a confidential informant had made a controlled drug buy from Wilson on September 26, 2012 and that on October 24, 2012, Joseph Walker, a different confidential informant, set up another controlled drug buy from Wilson. Police arrested Wilson without a warrant after Walker identified him at the gas station where the second controlled buy was to take place. A video-camera at the convenience store filmed the arrest. Defense counsel cross-examined the detective and elicited testimony that the police did not see any drugs or weapons on Wilson or witness him committing any illegal activity before arresting him. The court denied the motion, concluding that probable cause existed to arrest Wilson without a warrant based on the police's prior contact with Wilson involving drug sales and the fact that Walker identified Wilson as the intended seller when he arrived at the designated location for the controlled buy. (Evid. Hearing at 40-41, ECF No. 135.)

On May 7, 2013, Wilson proceeded to trial. During its case-in-chief, the government presented testimony from Jonathan Hartline, who stated that he frequently bought heroin from Wilson and, on three separate occasions, had purchased heroin from Wilson for someone who turned out to be a confidential informant for the government. (Tr. Trans. at 27-28, 33, ECF No. 122.) Wilson's counsel cross-examined Hartline, underscoring inconsistencies between his testimony and prior statements he had made to police regarding the quantity of drugs that he had bought from Wilson. (Id. at 56.) In addition, counsel highlighted that Hartline was hoping to receive a reduced sentence as a result of testifying. (Id. at 61.) The government also presented testimony from numerous officers involved in the investigation of Wilson. Tim Aylor, a sergeant with

the Albemarle County Police Department, testified that he drove Walker, the confidential informant, to the gas station for the second controlled buy. (Tr. Trans. at 51, ECF No. 123.) Aylor testified that Walker identified Wilson, and Aylor relayed that information to the officers who arrested Wilson. In addition, the government presented testimony from three forensic scientists who tested and weighed the drugs attributed to Wilson. Defense counsel cross-examined two of them rigorously to highlight the margin of error inherent in the weighing process.

**\*2** Finally, Ashley Powell, Wilson's girlfriend and codefendant, testified that she accompanied Powell during both controlled buys; her five-year-old son was also present during the first controlled buy; and that she used Wilson's phone and rented cars for him with money that he provided to her. (Tr. Trans. at 3, 10 ECF No. 123.) Powell testified that Wilson gave her money to rent a storage unit, where he stored a cardboard box that was later discovered to contain heroin and crack. (Id. at 30-31.) She testified that they went to the storage unit, and then d rove to the gas station where Wilson had arranged to meet Walker. (Id. at 39.) Defense counsel did not cross-examine Powell. (Id. at 48.)

Following the government's case, defense counsel moved for judgment of acquittal, arguing that the government had presented insufficient evidence of a conspiracy and that even if a conspiracy did exist, the evidence did not establish that it involved 100 grams of heroin. (Id. at 130.) The court denied the motion, concluding that the government had made out a case sufficient to go to the jury as to the conspiracy and the threshold quantity required under Count One. (Id. at 133.).

The jury returned a guilty verdict on all four counts. In anticipation of sentencing, the Probation Department prepared a presentence investigation report ("PSR"). It provided for a total offense level of 30, which included two enhancements: a two-level enhancement for maintaining a premises for the purpose of manufacturing and distributing a controlled substance, pursuant to USSG § 2D1.1(b)(12); and a two-level enhancement for being an organizer or leader in the conspiracy, pursuant to USSG § 3B1.1(c). (PSR at ¶¶ 22, 24, 29, ECF No. 130.) The PSR also provided for a criminal history category of VI, resulting in a guideline range of 168 to 210 months' imprisonment. (Id. at 175.)

Defense counsel filed objections to the enhancements but later withdrew them. (Sent. Tr. at 6, ECF No. 121.) At the sentencing hearing, the court adopted the PSR. Defense counsel raised the enhancement issues in arguing for a variance, claiming that Wilson had very little control over Powell in the conspiracy and used the storage unit only once to store drugs. The court agreed with counsel's arguments but concluded that a sentence below the advisory range was not appropriate because Wilson conducted some of his drug business with Powell's five-year-old son in the car. (Sent. Tr. at 16, ECF No. 121.) Accordingly, the court sentenced Wilson to 168 months' incarceration. (Judgment at 3, ECF No. 104.)

Wilson appealed. He challenged only the sentencing enhancement for his leadership role in the offense. United States v. Wilson, 570 Fed.Appx. 341 (4th Cir. 2014). The Fourth Circuit concluded that Wilson had waived his right to appeal because defense counsel withdrew his objections to the PSR. Id. at 341-42.

In his § 2255 motion, Wilson argues that counsel provided ineffective assistance by (1) failing to file a brief in support of the motion to suppress; (2) allegedly excluding Wilson from participating in jury selection; (3) failing to object to certain testimony and to cross-examine certain witnesses; and (4) withdrawing an objection to the sentencing enhancement for maintaining a premises for drug-related activities. Wilson also argues that he was subject to an unconstitutional search and seizure, that his Sixth Amendment confrontation clause rights were violated, that the sentencing enhancement for maintaining a drug-premises was improperly applied, and that he was subjected to sentencing entrapment by the police.

## II.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence ;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Wilson bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

**A. Ineffective Assistance of Counsel**

**\*3** Although ineffective assistance of counsel claims are often properly brought before the court through a § 2255 petition, a defendant must satisfy a two-prong analysis in order to state a viable claim: he must show both that counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by counsel's alleged deficient performance. Strickland v. Washington, 466 U.S. 668, 669 (1984). When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228-29 (4th Cir. 2008). Counsel's performance is judged "on the facts of the particular case," and assessed "from counsel's perspective at the time." Strickland, 466 U.S. at 689, 690.

To satisfy the prejudice prong of Stickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

*1. Failure to File Brief and Object at Suppression Hearing*

First, Wilson asserts that defense counsel's decision not to file a brief with the motion to suppress constituted ineffective assistance of counsel. Wilson's argument is unavailing. Defense counsel is given wide latitude to make strategic choices in developing a defense. Strickland, 466 U.S. at 690. Wilson admits that counsel said he did not file a brief in order to ensure that the court held a hearing. (Motion at 4, ECF No. 141-1.) Even if the court were to assume that failing to file a brief constituted deficient performance, Wilson cannot establish prejudice. At the motions hearing, trial counsel informed the district court of his theory of suppression, and the court was aware of all the relevant facts. Nonetheless, the court denied the motion to suppress finding that the police had probable cause to arrest Wilson based on prior drug sales known t o police, the confidential informant's contact with Wilson prior to the controlled buy, and Wilson's arrival at the control buy location. (Mot. to Supp. Hearing at 40-41, ECF No. 135.) Wilson has not pointed to any additional arguments that counsel might have raised in a brief. Accordingly, he has not demonstrated that there is a reasonable probability that the challenged evidence would have been suppressed, had counsel submitted a brief. See United States v. Podell, 869 F.2d 328, 330 (7th Cir. 1989) (concluding that where defense counsel failed to file a brief in support of a motion to suppress but informed the court of the arguments in support, the defendant could not establish prejudice).

Wilson also argues that counsel provided ineffective assistance by failing to object to the introduction of an edited version of a video documenting his arrest. He claims that the unedited video would have shown that the officers used excessive force when arresting him, which would have required the suppression of the drug evidence found on him. Courts give deference to defense counsel's determinations regarding the type of evidence to present. Wilson v. Greene, 155 F.3d 396, 404 (4th Cir. 1998). Moreover, Wilson's broad claim that officers used excessive force—without any specific support—is unavailing. Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("Unsupported, conclusory allegations do not entitle a habeas petitioner" to relief).

Accordingly, Wilson cannot establish that counsel's conduct satisfies Strickland's requirements.

*2. Exclusion from Jury Selection*

Next, Wilson argues that his counsel "did not follow [his] input on the selection of potential jurors." (Motion at 10, ECF No. 141-1.) Wilson does not claim that he was excluded from the jury selection process altogether. Although counsel has a duty to consult with a defendant regarding important issues of defense strategy, "[t]hat obligation ... does not require counsel to obtain the defendant's consent to every tactical decision." Florida v. Nixon, 543 U.S. 175, 187 (2004) (internal quotation omitted); United States v. Chapman, 593 F.3d 365, 367-68 (4th Cir. 2010) (noting that defense counsel "has the authority to manage most aspects of the defense without first obtaining the consent of the defendant"). Decisions regarding the empanelling of the petit jury are tactical ones. United States v. Boyd, 86 F.3d 719, 723 (7th Cir. 1996) ("Decisions on selection of a jury are among the many entrusted to counsel rather than to defendants personally.") Moreover, Wilson has not made any claim of impropriety with regard to the jury selection. See e.g., Snyder v. Louisiana, 552 U.S. 472, 476-77 (2008) (noting that to make a viable challenge to the petit jury, a defendant must establish a prima facie showing of

impropriety with regard to jury selection). Because jury selection falls within the purview of counsel's trial strategy and because Wilson cannot point to any specific instances of misconduct, this claim also lacks merit.

### 3. Failure to Object to Testimony and to Cross-Examine Witnesses

**\*4** Next, Wilson argues that counsel failed to cross-examine two crucial witnesses, Ashley Powell and Sgt. Tim Aylor. Powell, Wilson's girlfriend, testified that Wilson gave her a phone and money, which she used to rent storage units and cars, at Wilson's request. (Tr. Tran. At 10, ECF No. 123.) She also testified that for the most part, she was unaware that Wilson dealt drugs, "I really wasn't paying attention. Didn't really care." (Id. at 12.) Sgt. Aylor testified that he drove Walker to the gas station where Walker identified Wilson, and then Wilson was arrested.

It is true that defense counsel chose not to cross-examine either witness. When counsel fails, altogether, to challenge the prosecution's case, a defendant may establish ineffective assistance of counsel. See, e.g., Dixon v. Snyder, 266 F.3d 693, 703 (7th Cir. 2001) (holding defense counsel ineffective when counsel failed to cross-examine the only eyewitness to the crime and failed to introduce evidence that the witness had previously recanted his statement that the defendant was the perpetrator). However, in this case the record shows that counsel made a strategic choice not to cross-examine these witnesses and focus instead on challenging the existence of a conspiracy and the drug weight at issue. Strickland, 466 U.S. at 699.

Defense counsel based his argument for judgment of acquittal on the dearth of evidence of a conspiracy. Counsel argued that Wilson's relationship with Hartline was that of seller and buyer, nothing more. In addition, the government elicited testimony from Powell that she was largely unaware that Wilson sold drugs, and her involvement extended only to renting cars and storage units. By not cross-examining Powell, counsel minimized her importance to the conspiracy, thereby facilitating his argument that no conspiracy existed in the first place. Similarly, there were strategic reasons to avoid cross-examining Sgt. Aylor. His role was relatively minor, as Walker's chauffer to the intended drug buy location. Wilson does not allege any specific information that counsel could have elicited by cross-examining Sgt. Aylor. "When counsel focuses on some issues to the exclusion

of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect." Yarborough v. Gentry, 540 U.S. 1, 8 (2003).

Instead, counsel vigorously cross-examined those witnesses whose testimony bore on the drug weight attributable to Wilson. Counsel questioned Hartline about the amount of heroin he supposedly bought from Wilson and highlighted inconsistencies from prior statements. Counsel also questioned many of the forensic scientists who weighed the drugs to highlight the margin of error inherent in that process.

Wilson also argues that counsel failed to object to hearsay evidence. He appears to challenge the statements by Sgt. Aylor that Walker, who did not testify, identified Wilson as the drug dealer with whom he was planning to meet. Counsel did object to this statement on hearsay grounds at trial, but the court overruled the objection, concluding that Sgt. Aylor could testify regarding what Walker said, not for the truth of the matter asserted, but to establish "the context of what occurred." (Tr. Trans. at 52, ECF No. 123.) Once a court has previously decided an issue, generally it will not revisit the issue on collateral attack. See Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976). Wilson also suggests that counsel should have objected, as hearsay, to a recorded phone call between Powell and Walker arranging the meeting that resulted in Wilson's arrest. Even assuming that such a recording constituted hearsay, it did not provide any information that was not already in evidence, so Wilson cannot establish prejudice. Focusing on the existence of a conspiracy and the drug weight at issue was sound trial strategy and therefore, Wilson has not established that counsel's conduct fell below an objective standard of reasonableness. Yarborough, 540 U.S. at 7 ("Focusing on a small number of key points may be more persuasive than a shotgun approach.").

### 4. Withdrawal of Enhancement for Maintaining a Premises for Drug Purposes

**\*5** Wilson's final ineffective assistance claim is that his counsel withdrew an objection to the PSR for a two-level enhancement for maintaining a premises for drug purposes, pursuant to U.S.S.G. § 2D1.1(b)(12). Wilson argues that he did not agree to the withdrawal. Counsel stated at the sentencing hearing that he withdrew the objection because he believed that the enhancement applied. (Sent. Tr. at 13, 15 ECF No. 121.) However,

counsel argued that the two-level enhancement did not seem appropriate based on the fact that Wilson merely used the storage unit to house drugs for a few days. (Sent. Tr. at 15, ECF No. 121.) The court agreed, but ultimately decided that any potential reduction in sentence was "outweighed" by the fact that Wilson conducted drug business with Powell's five-year-old son in the car. (Id. at 16-17.) Because counsel raised the issue and the court considered it, Wilson cannot establish prejudice.

Furthermore, Wilson cannot establish prejudice because even if the court had considered the argument as an enhancement objection, it is unlikely a different outcome would have resulted. Under the applicable guideline, "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance" a two-level increase applies. U.S.S.G. § 2D1.1(b)(12). The Application Note regarding the enhancement explains, "Subsection (b)(12) applies to a defendant who knowingly maintains a premises (i.e., a building, room, or enclosure) for the purpose of manufacturing or distributing a controlled substance, including storage of a controlled substance for the purpose of distribution." U.S.S.G. § 2D1.1 cmt. n. 17 (emphasis added). Wilson used the storage unit to store drugs. He also "controlled" the unit because Powell testified that she rented the unit but did so at Wilson's request and with money that he provided to her. Therefore, the record supports application of the enhancement. See, e.g, United States v. Garcia, 774 F.3d 472, 474-75 (8th Cir. 2014) (concluding that an enhancement under U.S.S.G. § 2D1.1(b)(12) was appropriate, even though the defendant neither owned nor rented the premises at issue, because he had free access to it and used it to store drugs). Accordingly, Wilson has not established that his counsel provided either deficient performance or prejudice under Strickland.

### B. Fourth Amendment Unconstitutional Search and Seizure Claim

Wilson's next claim, that his Fourth Amendment rights were violated because the police arrested him without a warrant or probable cause, also fails. First, it was not raised on appeal, and so is procedurally defaulted. United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999) (noting that an issue not raised on direct appeal is defaulted in a subsequent § 2255 proceeding,). Second, the district court thoroughly considered the alleged unlawfulness of the arrest in denying the motion to suppress. Accordingly, Wilson is not entitled to a

rehearing on the issue. See United States v. Schulte, 230 F.3d 1356, *1 (4th Cir. 2000) ("Once a litigant is provided a full and fair opportunity to litigate a Fourth Amendment claim, he cannot re-litigate the claim in a motion pursuant to § 2255 unless there has been an intervening change in law.") (unpublished). Finally, as discussed above, Wilson cannot establish a Fourth Amendment violation on the merits. United States v. Williams, 10 F.3d 1070, 1073 (4th Cir. 1993) (noting that police are justified in effectuating a warrantless arrest if there is probable cause to believe that criminal activity is afoot). Accordingly, this claim must fail.

### C. Sixth Amendment Confrontation Clause Claim

Wilson also argues that his Sixth Amendment right to confront witnesses was violated because counsel did not cross-examine Powell and Sgt. Aylor, and Walker did not testify at his trial. These Confrontation Clause arguments, too, are procedurally defaulted as they were not raised on appeal. Mikalajunas, 186 F.3d at 492-93.

**\*6** But they are also unavailing on the merits. "[T]he Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curium) (emphasis in original). The defense had the opportunity to cross-examine Powell and Sgt. Aylor, but counsel made a tactical decision not to challenge their testimony. Moreover, Wilson does not allege that any favorable information would have been forthcoming from cross-examining those witnesses.

With regard to Walker, "The Sixth Amendment to the United States Constitution ... provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him." Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309 (2009) (internal quotation omitted). Generally, then, a witness must appear at trial to provide testimony, unless their statements are used "for purposes other than establishing the truth of the matter asserted." Crawford v. Washington, 541 U.S. 36, 59 n. 9 (2004). In this case, Walker's statement to Sgt. Aylor identifying Wilson was not admitted for the truth of the matter—to establish the identity of Wilson—but rather to explain the actions that followed—Sgt. Aylor contacted the police officers who arrested Wilson. Therefore, Wilson's Sixth Amendment argument also must fail.

**D. Sentencing Enhancement Errors**

Wilson also asserts that the court erroneously applied the sentencing enhancement for maintaining a premises for drug purposes. This claim is procedurally defaulted as it was not raised on appeal. Mikalajunas, 186 F.3d at 492-93. Moreover, as explained above, the record supports the application of the enhancement.

Finally, Wilson argues that he was the subject of "sentencing entrapment" because a detective, during the suppression hearing, testified that the police instructed a confidential informant to purchase enough drugs from Wilson to trigger a mandatory minimum sentence. (Sent. Tr. at 21, ECF No. 135.) Sentencing entrapment occurs when the police encourage a defendant to act criminally, who otherwise lacks the predisposition to commit the charged crime. United States v. Jones, 18 F.3d 1145, 1153 (4th Cir. 1994). Wilson does not claim, nor could he based on the record, that he would not have been predisposed to sell drugs were it not for the police. Moreover, he cannot make out a case of sentence manipulation, which occurs when police engage in "outrageous conduct" with the aim of increasing a defendant's sentence. Id. Police are justified in conducting investigations as they see fit, which might entail purchases of large quantities of drugs or multiple buys from a defendant. Id. at 1155. The police action in this case cannot be characterized as "outrageous." Id. Accordingly, Wilson cannot show that he was subject to sentencing error.

## III.

For the reasons stated herein, the court will grant the government's motion to dismiss. An appropriate order will be entered this day.

**All Citations**

Slip Copy, 2016 WL 1192699

---

End of Document

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2015 WL 3745723
Only the Westlaw citation is currently available.
United States District Court, W.D. Virginia,
Roanoke Division.

Dewayne Roy WILSON, Plaintiff,
v.
Eric HOLDER, et al., Defendants.

No. 7:15CV00040.
|
Signed June 15, 2015.

**Attorneys and Law Firms**

Dewayne Roy Wilson, Pro Se Plaintiff.

**OPINION**

JAMES P. JONES, District Judge.

**\*1** Plaintiff Dewayne Roy Wilson, a federal inmate proceeding pro se, filed this civil rights action under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 395–97 (1971), seeking monetary damages from persons who allegedly caused him to serve more prison time than authorized by law, in violation of the U.S. Constitution and other federal laws. [1] I must consider Wilson's claims against state officials under 42 U.S.C. § 1983. After review of the complaint, I find that it must be summarily dismissed without prejudice as frivolous.

**I.**

As alleged in his Complaint, the events relevant to Wilson's civil rights claims begin in February 1999, when authorities in Charlottesville, Virginia, brought criminal charges against him for forging public documents related to gun ownership and removing serial numbers from a handgun. Wilson pleaded guilty in May 2000 to a federal charge regarding the serial numbers. He claims that credit for jail time served in relation to these charges was confused by his use of three different aliases during this period. He was released from jail in Charlottesville in December 2000.

Authorities in Essex County, New Jersey, arrested Wilson in March 2002 on outstanding state charges and on warrants for violations of Virginia and federal probation. On October 4, 2002, a New Jersey judge sentenced Wilson to time served on one of the state charges there and a month later, Wilson was told that his other New Jersey charges had been dismissed. Wilson remained in jail, however, until he was extradited on January 14, 2003, by the Charlottesville sheriff to answer for the state and federal probation violations. The Virginia court sentenced him on May 27, 2003, to serve an 18–month term in the Virginia Department of Corrections ("VDOC").

Wilson secured a full-term release from this state probation violation sentence on April 21, 2004, only to be arrested on the federal probation charge and detained at a local jail under the alias of Dwayne Oliver. The federal court sentenced him as Dwayne Oliver on May 10, 2004, to serve ten months in prison, and federal marshals transported him to FCI Morgantown. Prison officials placed Oliver in segregation, based on records that he had previously absconded from two charges in New Jersey. When Oliver denied absconding, officials investigated, and Essex County authorities lodged a detainer for two 1998 New Jersey charges. Prison officials increased Oliver's security classification and transferred him to FCI Cumberland in September 2004.

While at FCI Cumberland, Oliver (a.k.a.Wilson) began complaining to federal and New Jersey officials that he had never received credit against any sentence for the 102 days of jail time he served in New Jersey between October 4, 2002, and January 14, 2003. After release from his federal sentence in January 2005, Wilson was extradited from Maryland to Essex County, New Jersey. He was released on bond there on February 17, 2005. Ultimately, on February 14, 2006, Essex County dismissed all state charges, purportedly because the arresting officer was deceased.

**\*2** Despite the fact that Wilson's Virginia probation and federal supervision had been transferred to New Jersey, he traveled to Virginia in October 16, 2006, where he was arrested for driving under the influence and for violations of state and federal supervision. He was sentenced to serve two years in prison for the Virginia charges. After his release on August 15, 2008, federal authorities transported him back to Essex County, where the New Jersey District Court sentenced him to eight months for violating his

federal supervised release. Wilson served this sentence at a federal prison facility in Brooklyn, New York, and secured his release on January 23, 2009.

Based on this narrative, Wilson filed this civil rights action against the United States Attorney General and other federal and state officials in five jurisdictions, seeking compensatory and punitive damages. [2] He asserts, in general terms, that unspecified defendants wronged him by violating federal law regarding the proper application of jail credits; mishandling his federal probation violation proceeding; punishing him in excess of the law in violation of the Ex Post Facto Clause; violating federal administrative procedure; failing to investigate the miscalculation of his sentence, which caused him to suffer false imprisonment, false arrest, and unconstitutional punishment; and violating the anti-shuttling provision of the Interstate Agreement on Detainers Act.

## II.

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The frivolity review described in this section "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams,* 490 U.S. 319, 327 (1989).

An action under *Bivens* is similar to an action under 42 U.S.C. § 1983, except that the former is maintained against federal officials for constitutional violations, while the latter is against state officials for violations of constitutional or other federally protected rights. *See Carlson v. Green,* 446 U.S. 14, 18–19 (1980) (applying *Bivens* in prison context); *Butz v. Economou,* 438 U.S. 478, 504 (1978). Under *Bivens* or § 1983, the plaintiff must show that the defendant's personal conduct violated his rights. *Trulock v. Freeh,* 275 F.3d 391, 402 (4th Cir.2001) *(Bivens ); Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1977) (finding that § 1983 "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights" because "[t]he doctrine of respondeat superior has

no application under this section.") (internal quotation marks and citations omitted).

**\*3** Wilson fails to state facts about conduct that any one of the defendants personally undertook in violation of his rights. His narrative complaint does not mention the defendants by name or describe anything they did to violate Wilson's constitutional or other federally protected rights. Under § 1983 and *Bivens,* Wilson cannot hold any of them liable merely based on the employment positions they held during the events of which he complains. Because his complaint thus provides no factual basis for actionable federal claims against the defendants, I will summarily dismiss the complaint under § 1915A(b)(1) as frivolous.

Regardless of additional facts Wilson might be able to provide, however, he has simply waited too long to bring this lawsuit, and as a result, all of his claims in this action are barred by the applicable statutes of limitation. When it is clear from the face of the complaint that the plaintiff's claim is barred by an applicable statute of limitations, the court may summarily dismiss the complaint without prejudice as frivolous. *Nasim v. Warden, Md. House of Corr.,* 64 F.3d 951, 956 (4th Cir.1995) (en banc).

Federal civil rights actions under *Bivens,* like civil rights actions against state officials under § 1983, are governed by the statute of limitations for personal injuries in the state where the tort allegedly occurred. *See Owens v. Okure,* 488 U.S. 235, 239–40 (1989) (§ 1983); *Reinbold v. Evers,* 187 F.3d 348, 358 n. 10 (4th Cir.1999) (*Bivens* ). A claim under § 1983 or *Bivens* accrues when the plaintiff knows enough about the harm done to him to bring his lawsuit. *Nasim,* 64 F.3d at 955 (regarding § 1983 claim accrual); *Abella v. Rubino,* 63 F.3d 1063, 1065 (11th Cir.1995) (finding that courts generally apply law of civil rights cases under § 1983 to *Bivens* cases) (citing other cases).

Wilson alleges miscalculations of his terms of confinement on sentences imposed by state and federal courts in Virginia and New Jersey. The applicable statutory filing period for a § 1983 or *Bivens* claim for a personal injury arising from events in Virginia or New Jersey is two years. *See* Va.Code Ann. § 8.01–243(a); N.J.S.A. § 2A:14–2. Thus, such a claim, based on events that occurred in either of these states, must be brought within two years from

the time when the plaintiff knew enough facts to bring his lawsuit.

It is clear from the face of Wilson's complaint that he knew the facts concerning all of his claims before the time of his release from incarceration in 2009. Yet, Wilson did not file this action until February 2015, more than six years after any of the alleged violations occurred. Thus, any viable claim he may have had against any of the defendants under § 1983 or *Bivens* is time barred under the

applicable limitations statutes. On that ground also, I will summarily dismiss Wilson's entire action under § 1915A(b)(1) as frivolous.

A separate Final Order will be entered herewith.

**All Citations**

Not Reported in F.Supp.3d, 2015 WL 3745723

Footnotes

1    Wilson is currently incarcerated at Federal Correctional Institution ("FCI") Ray Brook, in New York.

2    The defendants Wilson names are: Eric Holder, United States Attorney General; the Essex County, New Jersey, sheriff, jail director, prosecutor, and public defender; the Charlottesville, Virginia, sheriff and jail superintendent and two Charlottesville police detectives; the manager of the VDOC sentencing calculation authority, in Richmond, Virginia; and the wardens of FCI Morgantown, in West Virginia, and FCI Cumberland, in Maryland.

---

End of Document    © 2017 Thomson Reuters. No claim to original U.S. Government Works.